latter ground, and do not think the statute, properly construed, was in any way violated. Section 331 of the Election Law (Consol. Laws, c. 17) among other things provides:

"The lists of candidates of the several parties shall be printed in parallel columns and the number of such columns shall exceed by one the number of separate tickets of candidates to be voted for. * * * When no nomination has been made by a political party * * * for an office, to be filled at the election, the title of such office shall be printed in such party column, and underneath such title shall be printed in brevier type the words 'No Nomination.'"

It seems to us the meaning of the statute is that only parties that have tickets of candidates to be voted for at the election are entitled to columns on the ballot. If a party has made nominations for *some* of the offices to be voted for, but not *all* of them, then, as to the offices where no nominations are made, the title of the offices are to be printed, and underneath the words "No Nomination." This construction protects the rights of all, does no harm to any one, and no possible reason can be given for a strained construction requiring the vacant column to be put on the ballot, except the sentimental one suggested by the appellant's counsel, that a citizen when he has become affiliated with a certain political party should be allowed to register his vote for the principles which that party represents, though it have no candidate, and register his protest and show in an official and legal manner that he is still a member of the party and a believer in the principles for which it stands. This he is to do, we suppose, by putting his mark in the column or pulling the lever, which would record a vote for no one whatever. All concur.

---

### KREBS v. INTERNATIONAL RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

STREET RAILROADS (§ 117*)—ACTION FOR DAMAGES—QUESTIONS FOR JURY.

In an action against a street railroad company for injuries in a collision between one of its cars and plaintiff's wagon, evidence *held* sufficient to go to the jury as to whether the collision resulted from the motorman's negligence.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 117.*]

Appeal from Trial Term, Erie County.

Action by George H. Krebs against the International Railway Company. From a judgment of dismissal, plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and WILLIAMS, KRUSE, and ROBSON, JJ.

Vernon Cole, for appellant.
Dana L. Spring, for respondent.

KRUSE, J. The defendant's motorman drove his car against a load of hay, which the plaintiff was hauling across the defendant's tracks with a team of horses and wagon. The action is brought to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

recover damages resulting from the collision. The plaintiff was non-suited, and appeals.

The plaintiff, a farmer living outside of the city of Buffalo, had sold a load of hay to the International Brewing Company. He had brought the load of hay into the city and weighed it on the brewing company's scales. The scales are in front of the brewing company's plant, on the westerly side of Niagara street, between the curb and the building. Plaintiff's team was facing southwesterly. After the hay had been weighed the plaintiff drove southwesterly about 67 feet, where there is an opening in the curbing for a driveway into the street. He turned his team into the street, looked for street cars, saw the car which struck him, then about 300 or 400 feet away, and proceeded to drive across the tracks. He crossed the south-bound track, and when he was upon the north-bound track, upon which the car was approaching, he saw the car 30 or 40 feet away, coming toward him. He spoke to his horses, and tried to get across the track; nearly succeeded, but failed. The accident happened a little after 5 o'clock on the 23d day of December, 1908. When the plaintiff was driving across the track, his hired man was on another load of hay, which was then being weighed upon the scales. The man at the scales testified that he happened to look up when the car was about 30 or 40 feet away from the load of hay; that the back end of the load was struck, and tipped over; that when he saw the car coming he saw the motorman; that the motorman was standing with his head turned back in the car; that he (the motorman) was looking behind him—not looking in front; that the car was going pretty fast; and that the motorman did not turn his head until he was 4 feet from the wagon.

It is contended on behalf of the respondent that the hired man's story is so incredible that it ought to be disregarded as a matter of law, the claim being that the load of hay was in the line of vision between the man and the car; or at least between him and the motorman. I think that claim is not conclusively established. The wagon was nearly across the track; it was dusk, but light enough for the hired man to see the motorman and car, and the motorman could see the load of hay if looking ahead. At least it can be so found from the evidence. The motorman was not sworn, as the motion for a nonsuit was granted at the close of the plaintiff's evidence.

I think the nonsuit was improperly granted. As the case then stood it could well be found that the accident occurred through the inattention and lack of care of the motorman, and without any fault on the part of the plaintiff. The judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.